# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG DONG,<br><br>                    Petitioner,<br><br>        v.<br><br>D. MARIN, Warden, Adelanto, *et al.*,<br><br>                    Respondents. | Case No. 5:26-cv-00887-MRA-MAA<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [4]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 4. Petitioner requests that the Court order his immediate release from custody. *Id.* at 2. The Court read and considered the moving papers and Respondents' Notice of Non-Opposition and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

## I.    BACKGROUND

Petitioner Zhang Dong ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus on February 20, 2026. ECF 1 ("Pet."). Petitioner is a citizen of China and first entered the United States in 2010 with a student visa. *Id.* at 4. Petitioner has resided in the United States for over 15 years. *Id.* at 5. On September 11, 2018, an

-1-

immigration judge ordered Petitioner removed and designated China as the country of removal. *Id.* at 2. Petitioner then spent 190 days at the Adelanto ICE Detention Center. *Id.* at 5. ICE was unable to effect his removal to China, and Petitioner was released on March 22, 2019, on an Order of Supervision ("OSUP"). *Id.* at 2.

In the six years that followed, ICE was unable to obtain travel documents from China on behalf of Petitioner. *Id.* On August 14, 2025, when Petitioner arrived at a federal government building for his routine check-in with ICE, Petitioner was detained. *Id.* at 2. Petitioner was not given any notice as to why his OSUP was revoked or given any opportunity to respond. *Id.* at 5–6.

Petitioner "was not provided [a] proper place to sleep for 6 days," and was instead housed "in a holding tank at the federal building without a change of clothes, shower, or regular meal." *Id.* Petitioner was then transferred to the Adelanto ICE Detention Center on August 21, 2025. *Id.* at 2.

Since Petitioner was released on the OSUP in 2018, he has since complied with all conditions of the order, including periodic check-ins with ICE. *Id.* at 5. Petitioner has not committed or been convicted of any criminal activity, and he has since "worked steadily and paid taxes and contributed to society." *Id.* at 3.

In the instant TRO Application, which was filed the same day as the habeas petition, Petitioner requests that the Court enjoin Respondents D. Marin, Warden, Adelanto ICE Processing Center; Thomas P. Giles, Acting Field Office Director of the Los Angeles ICE Field Office; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the Department of Homeland Security; and Pamela Bondi, United States Attorney General (collectively, "Respondents" or the "government") from continuing to detain him. ECF 4. On February 26, 2026, the government filed a Notice of Non-Opposition to the TRO Application. ECF 9. The Non-Opposition acknowledged Petitioner's petition, the TRO Application, and the Court's order requiring a response to the TRO Application and stated only: "Respondents do not have an opposition argument." *Id.* at 2 (internal citations omitted).

-2-

//

## II.   DISCUSSION

The same standard applies to issuing a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).   Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

The authority of ICE to detain noncitizens subject to final orders of removal derives from 8 U.S.C. § 1231, which directs the Attorney General to cause the removal of any noncitizen from this country within 90 days of any order of removal.  8 U.S.C. § 1231(a)(1). Once that time passes, however, and it is determined that "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).   The noncitizen must be released on appropriate terms of supervision, 8 U.S.C. § 1231(a)(3), which appears to be what happened in this case at some point after Petitioner was ordered removed.  The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release if the noncitizen violates any conditions of release and for purposes of removal.  Specifically, a noncitizen's supervision may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Given the government's non-opposition to the TRO Application, the Court finds that

Petitioner is clearly entitled to immediate release from custody. The government has detained Petitioner without due process of law, without demonstrating that there is any significant likelihood of his removal in the reasonably foreseeable future, and without demonstrating that Petitioner violated any term of his supervision. *See Zadvydas*, 533 U.S. at 693 (explaining that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent"). Moreover, Petitioner was detained without notice and an opportunity to be heard on the revocation of his supervision in violation of the requirements of 8 C.F.R. § 241.13(i). It is black letter law that government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). This is especially true when the regulation provides for procedural due process. *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The government presents no defense or explanation for its actions despite freedom from detention being "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Nor does the government dispute that "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). As for the final *Winter* factors, the balance of equities and the public interest overwhelmingly weigh in favor of granting the TRO because it obviously would be neither equitable nor in the public interest to allow the government to continue to violate federal law.

Despite effectively conceding that Petitioner has been unlawfully detained, Respondents make no effort to release him. Given its prerogative, the government would continue to deprive Petitioner of his most fundamental liberty interest, keeping him unlawfully detained until this Court orders his release. This approach not only squanders finite judicial resources, but more importantly, it offends the Constitution. *See Zadvydas*, 533 U.S. at 679 ("Freedom from imprisonment lies at the heart of the liberty protected by

-4-

the Due Process Clause."). Thus, this Court enforces the Constitution as it must even when the government chooses to ignore it.[1]

## III.   CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court hereby **ORDERS** as follows:

1.   Respondents shall **IMMEDIATELY RELEASE** Petitioner from custody;

2.   Respondents shall **REINSTATE** Petitioner's prior order of supervision under the same terms and conditions without additional restrictions, such as electronic monitoring, if not previously imposed;

3.   Respondents are **ENJOINED** from re-detaining Petitioner without notice and opportunity to be heard consistent with the Due Process Clause and immigration law and regulations;

4.   Respondents are **ORDERED** to file reliable proof with this Court that Petitioner has been released by no later than **March 2, 2026**, at **8:00 a.m**. – failure to do so may result in sanctions;

5.   Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **March 6, 2026**. **Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Upon receipt of Respondents' response, the Court may order Petitioner to file a reply if necessary. If the parties agree that the TRO should be converted into a

---

[1] Any efforts to remove Petitioner to a third country must also comport with due process. ICE is required as a matter of law and protocol to afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture. ECF 14 at 12; *see also* 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18. "In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *3 (D. Mass. Apr. 18, 2025).

preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **February 24, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 27, 2026**, and expires at 3:00 p.m. on March 13, 2026. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 27, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE